Thad M. Scroggins, Esq., SBN 299453
**THE LAW OFFICE OF THAD M. SCROGGINS**
155 N. Lake Ave., Suite 800
Pasadena, CA 91101
Tel: (626) 993-6715
Fax: (626) 226-5594
thad@scrogginsesq.com

Attorney for Plaintiff, MMAS Research LLC

### IN THE UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MMAS RESEARCH LLC, a Washington limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>KAROLINSKA INSTITUTET; OSLO UNIVERSITY HOSPITAL; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.: 2:22-cv-4322<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>1. **Breach of Contract**<br>2. **Copyright Infringement Under 17 U.S.C. §§ 101,** *et seq.*<br>3. **Trade Secret Misappropriation Under 18 U.S.C. § 1836,** *et seq.*<br>4. **Trade Secret Misappropriation Under Cal. Civ. Code § 3426** *et seq.*<br>5. **Unfair Competition under Business and Professions Code §17200,** *et seq.*<br><br>**JURY TRIAL DEMANDED** |

Plaintiff MMAS RESEARCH LLC, by and through its undersigned attorneys, complains and alleges as follows:

1. Plaintiff MMAS RESEARCH LLC (referenced herein as "MMAS RESEARCH" and "Plaintiff") is a Washington limited liability company.

///

2. Plaintiff MMAS RESEARCH is the owner of the "MMAS RESEARCH WIDGET CODE" (the "Morisky Widget"), registered under United States Copyright Registration No. TX 8-816-517 (Registration date December 3, 2019) (the "Morisky Widget Copyright"). The Morisky Widget is an electronic diagnostic assessment protocol to measure and identify medication adherence behaviors, as further described below, and which includes registered translations of the widely used "Morisky Medication Adherence Scale (8-item)" ("MMAS-8") and "Morisky Medication Adherence Scale (4-item)" ("MMAS-4") tests.

3. On April 15, 2022, United States Magistrate Judge David W. Christel of the United States District Court, Western District of Washington at Tacoma, issued a Report and Recommendation in case no. 2:21-CV-1301-RSM-DWC ("Report and Recommendation"), a dispute between Plaintiff and Donald Moriskey, which acknowledged that "MMAS Research LLC holds the Copyright Registration to the Morisky Widget…." Report and Recommendation at page 6, line 22. Further, the Magistrate Judge acknowledged that "the Moriskey Widget is exclusively in [MMAS Research LLC's] control…" Report and Recommendation at page 8, line 16.

4. Defendant Karolinska Institutet ("KAROLINSKA") is a Swedish medical university.

5. Defendant Oslo University Hospital ("OSLO") is a Norwegian medical university.

6. Together, Defendants KAROLINSKA and OSLO are referred to herein as "Defendants" and individually as a "Defendant" in this Complaint.

7. Plaintiff is informed and believes and thereon alleges that Defendants DOES 1 through 20, inclusive, are other parties not yet identified who have infringed the copyrights that are the subject of this lawsuit, have contributed to the infringement of the aforementioned copyrights, or have engaged in one or more of the wrongful practices alleged herein. The true names, whether corporate, individual or otherwise, of Defendants 1 through 20, inclusive, are presently unknown to Plaintiff, which therefore

sues said Defendants by such fictitious names, and will seek leave to amend this Complaint to show their true names and capacities when their identities have been determined.

8. Defendant and Does 1 through 20 are collectively referred to as "Defendants" herein.

9. Plaintiff is informed, believes, and thereupon alleges that Defendants were and are in some manner responsible for the actions, acts, and omissions herein alleged, and for the damages caused by Defendants and are, therefore, liable for the damages caused to Plaintiff.

10. Plaintiff is informed, believes, and thereon alleges Defendants did, at all material times, foresee the nature and extent of the probable consequences of their acts in proximately causing said damages to Plaintiff.

11. Plaintiff is informed, believes, and thereon alleges that, at all relevant times, Defendants controlled and participated in the acts or conduct alleged herein.

## JURISDICTION AND VENUE

12. This action arises, in part, under the Copyright Act of 1976, 17 U.S.C. §§ 101, *et. seq*., conferring federal question jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction on Plaintiff's state law claims under 28 U.S.C. § 1367. Additionally, this Court has original jurisdiction over this controversy for misappropriation of trade secrets claims pursuant to 18 U.S.C. § 1836(c).

13. Venue is proper in this District pursuant to 28 U.S. C. §§ 1391(b)(2) because (a) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; (b) the unlawful acts of Defendants complained of herein have been committed within this District and have had or will have had effect in this District; (c) the written agreements identified and described more thoroughly below were entered into by the parties in this District and; and (d) the written agreements identified and described more thoroughly below, by their terms, stipulated to jurisdiction and venue in this District.

14. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(c)(3) because one or more Defendant corporation is amenable to personal jurisdiction in this District.

## ALLEGATIONS COMMON TO ALL CLAIMS

### A. Morisky Medication Adherence Scales and the Morisky Widget

15. Plaintiff MMAS Research was founded by Steven Trubow. Prior to this, Mr. Trubow was the Chief Technology Officer (CTO) of TAL Digital Solutions in San Francisco, California (TAL).

16. Mr. Trubow's technological competence is of a very high level. For example, while serving as CTO for TAL, Mr. Trubow led a team of 40 international engineers in Cabo San Lucas, Mexico to provide a post 9-11 real-time risk management system featuring an unprecedented level of security for Presidents George Bush (USA) Jiang Zemin (China), and Vicente Fox (Mexico), among 18 other foreign leaders attending the 2002 Asia-Pacific Economic Cooperation (APEC) Ministerial Meeting.

17. As the principal of MMAS Research, Mr. Trubow and the MMAS Research team focused on the problem of medication-taking behavior by patients with chronic and infectious diseases.

18. The result of this research and development was the Morisky Widget, a cloud-based system for assessing and optimizing medication adherence for specific patients based on a set of criteria whose predictive validity has been established at over 90%.

19. The Morisky Widget generates these assessments by integrating numerous novel electronic translations and original source code with scoring and coding of its own proprietary MMAS-4 and MMAS-8 tests, along with other widely-used tests in the field, specifically the Clinically Useful Depression Outcome Scale (CUDOS) and Clinically Useful Anxiety Outcome Scale (CUXOS) tests, the National Institute of Drug Abuse Modified Assist Screen (NIDA), and the Columbia-Suicide Severity Rating Scale (C-SSRS).

20. The above-mentioned diagnostic assessments are included in the registered source code of the Morisky Widget as part of its federal copyright registration.

21. The Morisky Widget also includes dimensional scoring for the Morisky Widget diagnostic assessments, including the original MMAS-4 and MMAS-8 test scoring and coding, as well as additional scoring and coding criteria that transform the MMAS-4 and MMAS-8 tests from measurements of adherence to a comprehensive diagnostic assessment of medication-taking behavior.

22. Plaintiff MMAS Research has licensed use of the Morisky Widget to pharmaceutical firms, hospitals and universities in over 80 languages and 100 countries.

### B. Copyrights

23. To protect the integrity of the Morisky Widget and protect against counterfeit, infringing, or unauthorized use, Plaintiff MMAS Research filed for and obtained a certificate of registration for the Morisky Widget Copyright from the United States Copyright Office.

24. The Morisky Widget Copyright includes the source code of the Morisky Widget, which itself includes the Morisky Widget diagnostic assessments, and the aforesaid scoring system that transforms the MMAS-4 and MMAS-8 from measurements of medication adherence to a diagnostic assessment of medication-taking behavior.

25. Plaintiff MMAS Research has complied in all respects with the Copyright Act of 1976, 17 U.S.C. § 101 *et. seq*. and all other laws governing copyrights as to the Morisky Widget Copyright.

26. Plaintiff MMAS Research has been, and still is, the author and exclusive holder of all rights, title, and interest in and to the copyrights to the Morisky Widget, which, again, include various translations of the MMAS-4 and MMAS-8 tests.

27. The Morisky Widget diagnostic assessments and the Morisky Widget Copyright are vital to Plaintiff's ongoing businesses and, more specifically, Plaintiff's efforts to ensure that third-party use of the Morisky Widget source code is authorized by

Plaintiff and used in compliance with Plaintiff's strict coding and scoring in the Morisky Widget.

28. The aforesaid coding and scoring algorithms are maintained by Plaintiff in confidence as trade secrets.

### C. Licenses

29. Plaintiff permits use of the Morisky Widget, licensing its copyright and trade secrets, only through a licensing program memorialized in a licensing agreement.

30. Plaintiff grants clinics, practitioners, and similar organizations limited-use perpetual licenses for the Morisky Widget that impose restrictions on the use and disclosure of the coding and scoring of the Morisky Widget diagnostic assessments.

31. The terms of the licenses granted by Plaintiff are designed not only to protect federally registered rights, but also to protect patients and health care providers from counterfeit or scientifically incorrect diagnostic assessments and inaccurate results.

32. Plaintiff makes considerable effort to maintain the secrecy of the coding and scoring of the Morisky Widget diagnostic assessments.

33. As part of these efforts, the licenses granted by Plaintiff expressly forbid the disclosure of coding and scoring of all versions of the Morisky Widget diagnostic assessments.

34. These licenses also protect the economic interests of Plaintiff in the Morisky Widget, because Plaintiff earns licensing fees as well as payments on a per-assessment-administered basis, unless such fees are waived.

35. Licenses for the Morisky Widget are typically structured as a fee for a fixed term or as a perpetual license, and there is a charge for each test administered by a licensee, in addition to those included in the cost of the license.

36. Plaintiff also charges fees for training and certification in use of the Morisky Widget.

/ / /

/ / /

37. The license agreement between Plaintiff and Defendant discussed below expressly forbids disclosure of the Morisky Widget diagnostic assessments coding and scoring without Plaintiff's permission.

38. Due to Plaintiff's consistent employment of a strict regimen of licensing and supervision, the Morisky Widget has enormous value both economically and for the promotion of health and proper diagnosis of persons suffering from a wide range of chronic and infectious diseases and mental health conditions worldwide.

# FIRST CAUSE OF ACTION
## BREACH OF CONTRACT
### (BY PLAINTIFF AGAINST DEFENDANTS)

39. Plaintiff realleges each allegation contained in the preceding paragraphs and incorporates them by this reference as though fully set forth herein.

40. Defendants KAROLINSKA and OSLO conducted a multi-country research study that used the Morisky Widget MMAS tests in Sweden and Norway (the "K-O Study").

41. On April 8, 2017, KAROLINSKA entered into a contract with MMAS RESEARCH for a limited-use license granting KAROLINSKA the right to administer, use, and score Morisky Widget MMAS tests under very specific conditions (the "KAROLINSKA AGREEMENT"). *Karolinska Agreement* (signed Apr. 8, 2017). A true and accurate copy of the KAROLINSKA AGREEMENT is attached as Exhibit A.

42. In particular, the KAROLINSKA AGREEMENT granted KAROLINSKA required Morisky Widget MMAS tests to be administered, scored, and reported by the Morisky Widget, as shown in Section II(8) (emphasis added):

> 8[sic].**Permission will only be granted to the Licensee to administer, score, and report MMAS tests by the Morisky Widget**. In case of administrative or scientific misconduct of the Morisky Widget, Licensor reserves the right to suspend this license immediately without refund of the licensing fee or prepaid credits. (Emphasis added).

43.     Similarly, OSLO entered into a contract with MMAS RESEARCH for a limited-use license granting OSLO the right to administer, use, and score Morisky Widget MMAS tests under very specific conditions (the "OSLO AGREEMENT"). *OSLO Agreement* (signed Nov. 6, 2018). A true and accurate copy of the OSLO AGREEMENT is attached as <u>Exhibit B</u>.

44.     Like the KAROLINSKA AGREEMENT, the OSLO AGREEMENT specifically required that "all MMAS tests must be scored and coded through the Morisky Widget." *Id.* at §§ I(F) and (G).

45.     Contrary to these two conditions in the KAROLINSKA AGREEMENT and the OSLO AGREEMENT, the Defendants decided to collect, score, and code Morisky Widget MMAS tests given for the K-O Study using third-party software Redcap.

46.     On November 9, 2021, KAROLINSKA employee Dr. Susanna Jaghult ("JAGHULT"), who signed the KAROLINSKA AGREEMENT, sent an e-mail to the president of MMAS RESEARCH, Steven Trubow ("TRUBOW"), stating that KAROLINSKA and OSLO were administering Morisky Widget MMAS tests in Redcap (emphasis added):

> **From:** Susanna Jäghult <susanna.jaghult@ki.se>
> **Sent:** Tuesday, November 9, 2021 11:21 PM
> **To:** Steve trubow <trubow1@gmail.com>; randi.opheim@medisin.uio.no
> **Cc:** 'Peter Hoeller' <peter.hoeller@bjfip.com>
> **Subject:** Sv: GDPR Widget
>
> Dear Steve
>
> We have had some problems including patients during the pandemic but now we are up and running again. **We are using the RedCap for collecting data**. RedCap is used by Karolinska Institutet among others and is a well known and safe system. And approved concerning GDPR. We are also, of course informing the patients about this in the information letter.

>Best regards
>Susanna

47. On November 11, 2022, JAGHULT sent TRUBOW another e-mail confirming that both she at KAROLINSKA and Randi Opheim at OSLO were using Redcap to collect and score Morisky Widget MMAS tests (emphasis added):

>**From:** Susanna Jäghult <susanna.jaghult@ki.se>
>**Sent:** Wednesday, November 10, 2021 2:34 AM
>**To:** Steve trubow <trubow1@gmail.com>; randi.opheim@medisin.uio.no; palle.bager@aarhus.rm.dk
>**Cc:** Peter Hoeller <peter.hoeller@bjfip.com>
>**Subject:** Sv: GDPR Widget
>Dear Steve
>
>Me, Palle Bager, and Randi are responisble [sic] for administration, scoring, coding, reporting in each country. **And we do it exactly as the way it is in the Widget**. If we are not allowed to do it in this secure way I don´t know how to proceed. Our inclusions were postponed due to the pandemic and when we started the inclusions again we needed to use a secure platform. **We thought that it was ok to use the RedCap as long as we used exactly the same administration - coding, scoring, reporting - as in the Widget**.
>
>Best regards
>Susanna

48. The KAROLINSKA AGREEMENT and the OSLO AGREEMENT specifically forbid the Defendants from scoring and coding Morisky Widget diagnostic assessments outside of the Morisky Widget.

49. Yet, JAGHULT admitted that both she and Ms. Opheim at OSLO were administering, scoring, and collecting Morisky Widget diagnostic assessments using a third-party software Redcap.

///

50. When Plaintiffs, through their attorney, informed KAROLINSKA and OSLO that their administered tests needed to be re-scored in the Morisky Widget, per the terms of the KAROLINSA AGREEMENT and the OSLO AGREEMENT, JAGHULT at KAROLINSKA informed Plaintiffs in an e-mail on November 17, 2021 that they will "immediately delete all data" related to the K-O Study:

> **From:** Susanna Jäghult <susanna.jaghult@ki.se>
> **Sent:** Wednesday, November 17, 2021 7:25 AM
> **To:** Peter Hoeller <peter.hoeller@bjfip.com>; randi.opheim@medisin.uio.no; palle.bager@aarhus.rm.dk; Anne.Berg@rsyd.dk; else.mikkelsen2@vest.rm.dk
> **Cc:** Steve trubow <trubow1@gmail.com>
> **Subject:** Sv: GDPR Widget
>
> Dear Peter
>
> Thank you for the information and suggestion. Unfortunately, the amount you suggest is not possible for us. We have therefore decided to remove the MMAS from the study in Sweden, Denmark, and Norway. **We will immediately delete all data**. We will not use the MMAS at all and therefore I hope this will end this case.
>
> If you have any further legal issues to discuss, I suggest that any future conversations are conducted with the legal department of Karolinska Institute as well. If this will be the case I will provide you with contact information.
>
> Best regards
> Susanna Jäghult

51. Moreover, both the KAROLINSKA AGREEMENT and the OSLO AGREEMENT strictly forbid the Defendants from divulging or distributing Morisky Widget diagnostic assessments, which includes the Morisky Widget diagnostic assessments and their scoring, to any third parties:

/ / /

KAROLINSKA AGREEMENT
D. The Morisky Widget License is for Karolinska Institute, Danderyds Hospital. and cannot be transferred outside of the licensed organization. Any individual of Karolinska Institute, Danderyds Hospital is licensed to use the Morisky Widget and can purchase pre-paid MMAS tests. **Under no circumstances can this MMAS license or pre- paid tests be transferred to another organization or individual outside of Karolinska Institute, Danderyds Hospital**[.]

E.   **MMAS CODING & SCORING criteria are trade secrets of Licensor and as such can NEVER be divulged in any publication, presentation, or website without written permission from Licensor**.

OSLO AGREEMENT
[11 sic]A.   The Licensee fully understands and agrees that the Morisky Widget MMAS Diagnostic Assessments are the exclusive property of Licensor and **can't be licensed, transferred, divulged or distributed without the written permission of the Licensor**.

52.  KAROLINSKA and OSLO's scoring of Morisky Widget diagnostic assessments in Redcap for the K-O Study was not permitted by either's agreement.

53.  KAROLINSKA and OSLO were not permitted to transfer of the translations contained in the Morisky Widget diagnostic assessments to Redcap.

54.  KAROLINSKA and OSLO were not permitted to transfer of the Morisky Widget diagnostic assessment scoring to Redcap.

55.  KAROLINSKA and OSLO were not permitted to transfer of the Morisky Widget scoring to Redcap.

56.  At all times during these actions, Defendant KAROLINSKA knew of the KAROLINSKA AGREEMENT and Plaintiff's copyrights and trade secrets in and to the Morisky Widget diagnostic assessments.

/ / /
/ / /

57. At all times during these actions, Defendant OSLO knew of the OSLO AGREEMENT and Plaintiff's copyrights and trade secrets in and to the Morisky Widget diagnostic assessments.

58. Plaintiff MMAS RESEARCH fully performed all of its obligations pursuant to the KAROLINSKA AGREEMENT.

59. Plaintiff MMAS RESEARCH fully performed all of its obligations pursuant to the OSLO AGREEMENT.

60. Defendant KAROLINSKA did not fulfill its obligations pursuant to the terms of the KAROLINSKA AGREEMENT.

61. Defendant OSLO did not fulfill its obligations pursuant to the terms of the OSLO AGREEMENT.

62. As a result of Defendant KAROLINSKA's breaches of the KAROLINSKA AGREEMENT, Plaintiff MMAS RESEARCH has suffered general, direct, and consequential damages, including the expenditure of attorney's fees, those damages all in an amount to be proven at trial.

63. As a result of Defendant OSLO's breaches of the OSLO AGREEMENT, Plaintiff MMAS RESEARCH has suffered general, direct, and consequential damages, including the expenditure of attorney's fees, those damages all in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
## COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 101, *et seq.*)
### (BY PLAINTIFF AGAINST DEFENDANTS)

64. Plaintiff realleges each allegation contained in the preceding paragraphs and incorporates them by this reference as though fully set forth herein.

65. At all times relevant hereto, Plaintiff MMAS RESEARCH was the owner of all copyright rights or rights to assert copyright claims for the Morisky Widget and all derivative works. Plaintiff MMAS RESEARCH has complied in all respects with the

///

Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq*., and all other laws governing copyright.

66. Plaintiff MMAS RESEARCH is informed and believes and thereon alleges that Defendants, without authorization, have infringed and will continue to infringe the Morisky Widget Copyright by using, copying, counterfeiting, distributing, or otherwise exploiting the same outside of the confines of their respective licensing agreements (i.e., the KAROLINSKA AGREEMENT and the OSLO AGREEMENT).

67. Upon information and belief, Defendant KAROLINSKA has improperly and illegally copied the software contained in the Morisky Widget to create an unauthorized derivative in Redcap.

68. Defendant KAROLINSKA's copying of the software without approval or authorization infringes MMAS Research's exclusive copyrights in the software pursuant to 17 U.S.C. § 501.

69. Defendant KAROLINSKA's infringement of the Morisky Widget Copyright was intentional, knowing, willful, and malicious.

70. Upon information and belief, Defendant OSLO has improperly and illegally copied the software contained in the Morisky Widget to create an unauthorized derivative in Redcap.

71. Defendant OSLO's copying of the software without approval or authorization infringes MMAS Research's exclusive copyrights in the software pursuant to 17 U.S.C. § 501.

72. Defendant OSLO's infringement of the Morisky Widget Copyright was intentional, knowing, willful, and malicious.

73. Plaintiff MMAS RESEARCH is entitled to an injunction restraining Defendants and all persons acting in concert with them, from engaging in further such acts in violation of the copyright laws.

74. As a direct result of Defendants' infringement, Plaintiff MMAS RESEARCH has sustained damages in an amount to be determined at trial.

75. Pursuant to 17 U.S.C. §§ 502, 503, 504, and 505, Plaintiff MMAS RESEARCH is entitled to an award of actual damages, injunctive relief, the impoundment and destruction of the infringing materials, and its attorneys' fees and costs against all Defendants.

76. Plaintiff MMAS RESEARCH is entitled to statutory damages for infringement of the Morisky Widget Copyright by Defendants.

## THIRD CAUSE OF ACTION

## TRADE SECRET MISAPPROPRIATION (18 U.S.C. § 1836, *et seq.*)

## (BY PLAINTIFF AGAINST DEFENDANTS)

77. Plaintiff realleges each allegation contained in the preceding paragraphs and incorporates them by this reference as though fully set forth herein.

78. Plaintiff owns confidential information, proprietary and trade secret information, as alleged above, including but not limited to the Morisky Widget, which includes translations of the Morisky Widget diagnostic assessments as well as their scoring and coding.

79. Plaintiff's confidential, proprietary, and trade secret information relates to products and services used, sold, shipped and/or ordered in, or intended to be used, sold, shipped, and/or ordered in, interstate or foreign commerce.

80. Plaintiffs have taken reasonable measures to keep such information secret and confidential. For example, Plaintiff requires any licensee of the Morisky Widget to contractually agree to maintain the confidentiality of the coding and scoring criteria.

81. Plaintiff's confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

82. Defendants misappropriated Plaintiff's confidential, proprietary, and trade secret information by disclosing the Morisky Widget diagnostic assessments and the Morisky Widget coding criteria in the K-O Study, which was viewed by people outside

of Defendants' organizations. Defendants' misappropriation of Plaintiff's confidential, proprietary, and trade secret information was intentional, knowing, willful, and malicious.

83. As the direct and proximate result of the aforementioned Defendants' conduct, Plaintiff has suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial.

84. Because Plaintiff's remedy at law is inadequate, Plaintiff seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information and to protect other legitimate business interests. Plaintiff's business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

85. Plaintiff has been damaged by all of the foregoing and is entitled to an award of exemplary damages and attorney's fees.

## FOURTH CAUSE OF ACTION
## TRADE SECRET MISAPPROPRIATION (Cal. Civ. Code § 3426 *et seq.*)
### (BY PLAINTIFF AGAINST DEFENDANTS)

86. Plaintiff realleges each allegation contained in the preceding paragraphs and incorporates them by this reference as though fully set forth herein.

87. Plaintiff owns confidential information, proprietary and trade secret information, as alleged above, including but not limited to the Morisky Widget assessment coding and scoring criteria, which constitute trade secrets as defined by California's Uniform Trade Secrets Act.

88. Plaintiff has taken measures that are reasonable under the circumstances to maintain the secrecy of the trade secrets at issue.

89. Defendants knew or should have known under the circumstances that the Morisky Widget and Morisky Widget diagnostic assessment coding criteria

/ / /

misappropriated by them were trade secrets because the KAROLINSKA AGREEMENT and the OSLO AGREEMENT conveyed such facts.

90. Defendants misappropriated and threatened to further misappropriate trade secrets at least by acquiring trade secrets with knowledge of or reason to know that the trade secrets were acquired by improper means, and Defendants are using and threatening to use the trade secrets acquired by improper means without Plaintiff's knowledge or consent.

91. As the direct and proximate result of Defendants' conduct, Plaintiff is threatened with injury and have been injured in an amount in excess of the jurisdictional minimum of this Court and that will be proven at trial. Plaintiff has also incurred, and will continue to incur, additional damages, costs, and expenses, including attorney's fees, as a result of the Defendant's misappropriation. As a further proximate result of the misappropriation and use of Plaintiff's trade secrets, Defendants were unjustly enriched.

92. Defendants' acts were willful, malicious, and fraudulent, and Plaintiff is entitled to exemplary damages under California Civil Code § 3426.3(c).

93. Defendants' conduct constitutes a transgression of a continuing nature for which Plaintiff has no adequate remedy at law. Unless this Court enjoins Defendants, they will continue to use Plaintiff's trade secret information to enrich themselves. Plaintiff is entitled to an injunction against the misappropriation and continued threatened misappropriation of trade secrets under California Civil Code § 3426.2, and Plaintiff asks this Court to restrain Defendants from using all trade secret information misappropriated from Plaintiff.

94. Pursuant to California Civil Code § 3426.4 and related law, Plaintiff is entitled to an award of attorneys' fees for Defendants' misappropriation of trade secrets.

/ / /

/ / /

/ / /

/ / /

# FIFTH CAUSE OF ACTION

## UNFAIR COMPETITION

### [BUSINESS AND PROFESSIONS CODE §17200, ET SEQ.]

### (BY PLAINTIFF AGAINST DEFENDANTS)

95. Plaintiff realleges each allegation contained in the preceding paragraphs and incorporates them by this reference as though fully set forth herein.

96. Defendants have committed all of the aforesaid acts willfully, maliciously, and oppressively, without regard to Plaintiff's legal, contractual, and exclusive proprietary rights.

97. Defendants' acts and practices as detailed above constitute acts of unlawful, unfair, or fraudulent business acts and practices within the meaning of California Business and Professions Code § 17200.

98. Pursuant to California Business and Professions Code §17203, Plaintiff seeks an order from this Court prohibiting Defendants from engaging or continuing to engage in the unlawful, unfair, or fraudulent business acts or practices set forth herein.

99. Plaintiff has incurred and will continue to incur attorney fees in enforcing the rights described herein and seek recovery of their attorney fees incurred pursuant to Code of Civil Procedure § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor and against Defendants as follows:

1. For actual damages in an amount according to proof at trial, and for any additional profits attributable to infringements of Plaintiff's Morisky Widget Copyright, in accordance with proof at trial;

2. For statutory damages for copyright infringement of the Morisky Widget Copyright by Defendants;

3. For issuance of preliminary and permanent injunctive relief against Defendants, and each of them, and their respective officers, agents, representatives,

servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants, enjoining them to:

    a. Refrain from using the Morisky Widget, Morisky Widget translations, and Morisky Widget diagnostic assessments until corrective measures are agreed upon, including the maintenance on websites, posted on the Internet, or in any publication, the articles, publications, and reports described herein, or any such articles, publication, and reports in the future which use or reference the Morisky Widget or Morisky Widget diagnostic assessments;

    b. Deliver upon oath, to be impounded during the pendency of this action, and for destruction pursuant to judgment herein, all originals, copies, facsimiles, reproductions, or duplicates of any work shown by the evidence to infringe the Morisky Widget.

4. Order that Defendants file with this Court and serve upon Plaintiff within thirty (30) days after service on Defendants of an injunction in this action, a report by Defendants, under oath, setting forth that Defendants have complied with the injunction, as well as the steps they have taken to comply;

5. For compensatory damages in an amount according to proof at trial;

6. For costs of suit herein incurred;

7. For attorneys' fees;

8. For prejudgment interest in the amount of ten percent (10%) per annum or the maximum amount allowed by law; and

9. For such other and further relief the Court deems just and proper.

Plaintiff demands a jury trial on all issues so triable pursuant to Fed. R. Civ. P. 38 and the 7th Amendment to the United States Constitution.

///

///

///

Dated: July 15, 2022        **THE LAW OFFICE OF THAD M. SCROGGINS**

By: /s/ Thad M. Scroggins
Thad M. Scroggins, Esq.
Attorney for Plaintiff,
MMAS RESEARCH LLC